### Clay R. Lawrence, Defendant in Error, v. Nyberg Automobile Works, Plaintiff in Error.

#### Gen. No. 15,529.

ASSUMPSIT—*when corporation not liable.* A corporation is not liable upon a transaction (liability for which it has not assumed) which occurred long prior to its organization even though it has succeeded to the business of the concern which created the obligation.

Error to the Municipal Court of Chicago; the Hon. FRANK G. PLAIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1909. Reversed and judgment here. Opinion filed May 31, 1911.

WILLIAM A. JENNINGS, for plaintiff in error.

EDWARD MAHER and ROBERT F. KOLB, for defendant in error.

MR. JUSTICE BALDWIN delivered the opinion of the court.

Defendant in error brought a suit of the fourth class in the Municipal Court of Chicago against plaintiff in error, on August 24, 1908, to recover $200, alleged to be due her as the proceeds of the sale of her automobile. A jury trial was had, resulting in a verdict and judgment in her favor.

It appears that in May and June, 1907, one Henry Nyberg was doing business in the city of Chicago under the name and style of Nyberg Automobile Works; that he had at that time in his employ, as a salesman, one W. G. Martin, and that pursuant to an advertisement, soliciting second hand automobiles to be bought and sold, said to have been inserted by Martin, with the knowledge of Nyberg, one Wenham, as agent for plaintiff, replied by letter to the advertisement stating that he had an automobile to sell.   After some negotiations by correspondence and over the telephone Wenham had plaintiff's second hand automobile delivered to Nyberg personally.

It appears that Martin's letters were written upon Nyberg's stationery, and, that copies of Martin's letters to defendant in error, and to her agent, were filed and kept in Nyberg's letter files.

The testimony on behalf of the plaintiff tends to show that Martin made an offer over the telephone to Wenham, as agent for plaintiff, of $200 for the automobile, based upon the assumption that it was in good condition as Wenham claimed it was, and that after the automobile had been delivered Wenham had an interview with Martin by telephone, and that Martin had replied to him over the telephone, "We will send a check for $200 for the automobile in question."

Plaintiff herself testified, that she had talked with Martin in July, 1907, at Nyberg's place of business, at which time she asked payment for her automobile, and Martin at first claimed that they had no such machine there, whereupon she explained it was the one that had been sent them by Wenham, and that Martin then stated, "that had been sold in Idaho, and the Nyberg Automobile Works would mail Wenham a check in a few days." . She testified to a still later conversation with Martin, in which he had stated the check would be sent to Wenham.

The machine was delivered to Nyberg personally on the 17th day of May, 1907, and was never paid for, though from the time of its delivery until the trial, February 5, 1909, it was in his place of business, which was the same

place of business occupied by the corporation after its organization, and Nyberg on the trial testified, that it was still on hand and unsold, and that defendant in error might have it whenever she wanted it. Nyberg claimed that the automobile was not purchased, but was only received by him to be sold, and that he had not been able to sell it.

On the 24th of August, 1908, plaintiff began her suit against Nyberg Automobile Works, a corporation, which, as the evidence shows, was not organized until January, 1908.

Plaintiff in error contends: First, that Martin was not shown to have authority to bind Nyberg in purchasing automobiles; second, that the evidence did not show a sale of the automobile to the Nyberg Automobile Works, but rather that it was placed there for the purpose of having it sold; third, that, in any event, appellant, the Nyberg Automobile Works, a corporation, was not and could not be liable for transactions occurring in May, June or July of the year previous to its incorporation.

In answer to this contention, defendant in error insists that the concern with which she did business in May, June and July, 1907, held itself out to be a corporation, and that, therefore, it is estopped in this proceeding to deny such corporate existence.

In the brief filed on behalf of plaintiff in error two contentions are made: First, that the burden is on the plaintiff to show that the agent had authority to purchase. Second, that a corporation is not liable for debts created or existing prior to its organization unless it has agreed to pay them.

The brief and argument of defendant in error is based upon the proposition that, "where business is transacted under a name that implies corporate existence, and thereafter a corporation is organized by the persons transacting such business under the same name, and the assets of the old firm are transferred to the corporation, nothing appearing to show a change, the corporation is liable for the debts previously incurred."

We have considered the briefs and arguments of counsel,

and have examined the testimony as shown in the abstract and record, and we think it clear from such examination that plaintiff in error is not liable in this action.

Whatever may be the liability of Nyberg personally we do not find any such conditions as would justify us in holding appellant corporation liable on account of a transaction which occurred more than six months prior to its organization.

Nyberg was doing business under the name and style of Nyberg Automobile Works, and we cannot say that this name implies a corporate existence. On the contrary, it is a matter of common knowledge, that individuals and firms often adopt for convenience, trade names similar to the one used here. It may be that a trade name ending in "Company" might be held to import corporate existence, but that is not the situation here.

The authorities cited by defendant in error to support her contention are not applicable. In Mutual Aid Association v. Hogan, 124 Ill. App. 447, the court said: "We think the appellant is estopped to deny that it was a corporation at the time it issued this certificate. Its name as set forth in the certificate imports that it is a corporation. It signed that contract by its President and by its Secretary, and attested the same with its seal."

In the case of U. S. Express Co. v. Bedbury, 34 Ill. 459, the language of the court is: "It seems to comport with reason, that when an association of persons assume a name which implies a corporate body, and exercise corporate powers, they should not be heard to deny that they are a corporation."

In Crystal White Soap Co. v. Rosebloom, 91 Ill. App. 551, the court said: "At the head of letters to the agent of defendant in error concerning rent of said premises, and promising to make payments on account of same, and signed in the name of plaintiff in error by said Mason as manager, appear the names of the president, vice-president, secretary and treasurer of plaintiff in error, besides that of said Mason as manager."

Moreover, in this case, the company after becoming incorporated actually moved into the premises occupied, and paid rent thereon for a time at the rate mentioned in the lease.

In the case at bar it does not appear that upon the letterhead, or otherwise, Nyberg used any such words as "president," or "secretary," or that he had any seal or issued any certificates, or that anyone was associated with him, or that there were any officers corresponding to president or secretary connected with the business. There was nothing in the transaction to in any way indicate that defendant in error even supposed she was dealing with a corporation, nor is there anything in the record to show that the corporation had or claimed to have any interest in the automobile.

In this state the law is well settled that a corporation is not ordinarily liable for debts created by the person or firm to whose business it succeeded, but which it did not assume.

In Rockford, R. I. & St. L. R. R. Co. v. Sage, 65 Ill. 328, it was held that a railroad corporation was not liable for services rendered before its organization, unless the company promised to pay after it was organized.

In Stowe v. Flagg et al., 72 Ill. 397, it was held that the agreement of parties intending to engage in and form a manufacturing corporation, and to put in property as stock, but which was never subscribed, did not bind the corporation, nor did the property become that of the corporation, although it was used by the company.

In the case of Western Screw & Manufacturing Company v. Cousley, 72 Ill. 531, it was held, where the corporators, before the organization of the company was completed, employed a superintendent, and he entered upon the duties of the place and rendered services for the inchoate company, it, when organized, was not liable to pay for such services. See also Gent v. Mfg. & Mer. Mut. Ins. Co., 107 Ill. 652.

We are clear, therefore, that plaintiff in error was not indebted to defendant in error on account of the transaction complained of, and, accordingly, the judgment must be reversed and judgment entered here upon a finding of facts.

*Reversed and judgment here.*